DAVID A. HYRE, Respondent, v. THE CENTRAL BANK OF KANSAS CITY, Appellant.

Kansas City Court of Appeals, February 8, and March 7, 1892.

1. **Collateral Securities:** RIGHT TO AFTER PAYMENT OF PRINCIPAL DEBT. When the original debt for which collaterals are pledged is paid, the owner is entitled to the return of the collaterals.

2. **Principal and Agent:** BANK TELLER: WHO IS TRUSTED. Where a surety, in company with his principal, visits a bank, and in the presence of its president, cashier and teller the principal makes it known that the surety wishes to borrow some money, and thereupon the surety exhibits his collaterals which are examined and (the teller informs him) are accepted, and thereupon, in the presence of the other officers, the teller makes out the note, takes the collaterals and pays the money from the bank's moneys, the teller is the agent of the bank, and the bank will be liable for a conversion of the collaterals by the teller, as it is apparent that the bank. and not the teller, was the party trusted.

*Appeal from the Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

AFFIRMED.

*Hayward & Griffin,* for appellant.

The court should have sustained defendant's demurter to the evidence, or under instruction, numbered 9 in the abstract, asked by defendant and refused by the court, directed a verdict for the defendant. *Nanson v. Jacob,* 93 Mo. ( 1887 ) 331, 340 ; *Walsh v. Sickler,* 20 Mo. App. ( 1886 ) 374, 378 ; *Munger v. Hess,* 28 Barb. ( N. Y.) 75 ; *Hill v. Balesco,* 17 Ill. App. 194 ; *Fillmore v. Hubbard,* 31 How. Pr. ( N. Y.) 424 ; *Kelsey v. Griswold,* 6 Barb. ( N. Y.) 436 ; *Davis v. Buffum,* 51 Me. 160 ; *Yale v. Saunders,* 16 Vt. 243 ; *Boobier v. Boobier,* 39 Me. 406 ; *Ward v. Moffett,* 38 Mo. App. 395, 403 ; *Walker v. Bank,* 5 Mo. App. 214, 217 ; *Winsor v. Bank,* 18 Mo. App. 665 ; *Mussey v. Bank,* 9 Met. ( Mass.) 313 ; *Bank v. Bank,* 16 N. Y. 125 ; *Meads v. Bank,* 25 N. Y. 143 ; *Bank v. Gove,* 57 N. Y. 597 ; *Sparks v. Trans. Co.,* 15 S. W. Rep. 418.

*Fraher & Lyman,* with *Kagy & Bremermann,* for respondent.

( 1 ) What constitutes a conversion is abundantly settled by the following authorities : 4 Am. & Eng. Ency. of Law, 108 ; *Welton v. Hull,* 50 Mo. 296 ; *Sherman v. Com. Co.,* 29 Mo. App. 31 ; *Bank v. Metcalf,* 40 Mo. App. 494 ; *Allgear v. Walsh,* 24 Mo. App. 134 ; *Warnick v. Baker,* 42 Mo. App. 439 ; *Williams v. Wall,* 60 Mo. 318 ; *State to use v. Berning,* 74 Mo. 87 ; *Allen v. McMonagle,* 77 Mo. 478 ; *Sherman v. Printing Co.,* 29 Mo. App. 31. ( 2 ) The act of Ensign in receiving and subsequently appropriating and converting the collateral notes was the act of the bank. *Qui facit per alium facit per se. Martin v. Webb,* 110 U. S. 7 ; *Bank v. Bank,* 10 Wall. 604, 650 ; *Sails v. Miller,* 98 Mo. 478 ; *Young v. Hudson,* 99 Mo. 102 ; *Hamilton v. Ins. Co.,* 94 Mo. 353 ; *Baker v. Railroad,* 91 Mo. 152 ;

*Ingalls v. Averitt*, 34 Mo. App. 371; *Harrison v. Railroad*, 70 Mo. 364; *Bank v. Coal Co.*, 86 Mo. 125; *Nicolson v. Golden*, 27 Mo. App. 132; *Hayner v. Churchill*, 29 Mo. App. 676; *Crouch v. Railroad*, 42 Mo. App. 248; *Bank v. Gove*, 57 N. Y. 597; *Loyd v. Bank*, 15 Pa. St. 172; *Sparks v. Dispatch Co.*, 104 Mo. 53; *Windsor v. Bank*, 18 Mo. App. 665; *Mills v. Meyers & Co.*, 43 Mo. App. 124; *Mfg. Co. v. Ball*, 43 Mo. App. 512. (3) Both Trueworthy, the president, and Hamilton, the cashier, were present when the loan was applied for and made, and neither objected. This worked an estoppel *in pais*. *Teasdale v. McPike*, 25 Mo. App. 34: Story on Contracts, sec. 329; *Hubbard v. Coolige*, 1 Mo. 93; *Thurston v. Thornton*, 1 Cush. 89; *Chouteau v. Allen*, 70 Mo. 290; *Martin v. Webb*, 110 U. S. 7; *Ferneau v. Whitford*, 39 Mo. App. 311; *Neuhoff v. O'Reilly*, 93 Mo. 164; *Lee v. Turner*, 89 Mo. 489.

*Hayward & Griffin* and *Wash. Adams*, for appellant, on motion for rehearing.

(1) He who ratifies a transaction must adopt it as an entirety. He cannot adopt a part and reject a part of the same transaction. (2) A receiving and paying teller of a bank is a special agent, and has no power by virtue of such employment on behalf of the bank to make or extend loans, pass upon the credit of customers or change the contracts of the bank. *Walker v. Bank*, 5 Mo. App. 214–217; *Mussey v. Bank*, 9 Met. (Mass.) 306.

GILL, J.—Since the principal question in this case arises from the court's failure to sustain a demurrer to plaintiff's testimony we here recite the substance of that evidence. It tended to prove the following state of facts: At the dates hereinafter mentioned defendant was a banking corporation engaged in prosecuting a general banking business at Kansas City. Among other

things, it made loans and received commercial paper and other collaterals as securities therefor. Dr. Trueworthy was its president, Mr. Hamilton its cashier, and Mr. Ensign its teller. The office was arranged with the customary banking furniture, being partially inclosed with counters mounted with iron fixtures, to which were wickets. The president and cashier occupied the front of this office, where they sat at their desks. The teller's place was behind the counter. During business hours, at about two o'clock on the twenty-seventh day of February, 1888, plaintiff with one George Rasur, well known as the Cow-Boy preacher, went into the bank to negotiate a loan on collateral security. Ensign, the teller, was behind the counter in the bank, and engaged in the discharge of the business of the bank, receiving and paying out moneys for the bank. Trueworthy and Hamilton sat outside the counter. Rasur, who was acquainted with the officers of the bank, introduced the plaintiff to Dr. Trueworthy, Mr. Hamilton and Mr. Ensign, plaintiff being an entire stranger to all these gentlemen. After the introduction, Rasur informed these officers that Hyre wanted to borrow some money on collateral security. After some negotiation, plaintiff exhibited two notes, one for $500, and one for $1,000, both secured by chattel mortgages which he proffered as collateral.

Plaintiff, in the presence of Trueworthy and Hamilton, passed the notes and mortgage to Ensign, who was behind the counter. Subsequently, Ensign, with the papers in his hands, passed from behind the counter and walked around to where Trueworthy and Hamilton sat. Returning to plaintiff, who sat a few feet away, Ensign beckoned plaintiff and Rasur to the rear end of the office. Ensign then went around from behind the counter to where Trueworthy and Hamilton sat and after the lapse of a short time turned, walked up to plaintiff and said within hearing distance of Trueworthy and Hamilton, "I think that we can let you have

the money. I will know in a few minutes." Ensign then sent a young man, an employe in the office, out with the papers. After his return Ensign said, "We can let you have the money."

He then prepared a note for $340, using for the purpose a printed blank note which he took from the counter of the bank, where there were a number scattered about. This note was on its face made payable to the Central Bank or order, and recited a deposit of the collateral notes with said bank. The note was signed by both Rasur and Hyre. The loan, however, was for the benefit of Rasur only. Ensign then paid plaintiff $300 in cash, which he took from the moneys of the defendant which were lying on the counter. This was done in the presence of Dr. Trueworthy, who sat only a few feet away from where plaintiff stood when he received the money. Mr. Hamilton was also present when the money was paid, Ensign being inside the counter and Trueworthy and Hamilton on the outside.

Before the maturity of the $340 note, Rasur executed to Ensign his individual note for $440, received $100 in cash, and without plaintiff's knowledge or consent pledged plaintiff's collateral notes for its payment. About the time when the first note became due, plaintiff was informed by Ensign that Rasur had paid it and that it had been delivered to Rasur. Rasur subsequently delivered the $340 note to plaintiff. Across the face of the note Ensign had marked in large letters the word "PAID." Plaintiff, not receiving his collateral notes, was informed by Rasur that he had them in his possession, but not with him. Plaintiff, becoming suspicious, went to the bank, when, for the first time, he learned from Ensign that Rasur had received $100, made his individual note, and that plaintiff would receive his collateral notes conditioned upon the payment of the Rasur note, to which he was not a party nor of the existence of which had he any knowledge until so informed by Ensign. Plaintiff subsequently

demanded his collateral, causing a notice to be served on Dr. Trueworthy, the president, who refused its delivery and disclaimed any knowledge of the transaction.

Subsequently, Ensign, at the bank, sold the two collateral notes at public auction for the sum of either $800 or $1,100. Ensign does not remember which. The proceeds of that sale were applied in payment of the $440 note of Rasur's, and the surplus, either $360 or $660, was appropriated by either Ensign or the bank. Plaintiff sued the defendant for conversion of the collateral notes. The jury found for the plaintiff for the full value of the notes with interest and defendant appealed.

Upon the facts, as they were found by the jury, the judgment was clearly for the right party, and must be affirmed. Clearly plaintiff was wronged in the transaction. He had gone to the bank to borrow money for Rasur's use, and had effected a loan by giving his obligation and pledging these collateral notes; the original note for which these collaterals were pledged was paid, and thereupon plaintiff became entitled to their possession. But instead of returning these securities to the owner, Rasur was allowed without plaintiff's consent to use them in effecting another loan; and on Rasur's default in this second loan the plaintiff's collaterals were sold.

But defendant seeks relief from this apparent responsibility by an attempt to deny the matter as a bank transaction, claiming that it was an individual loan of Ensign's, and that he (Ensign) had no authority to loan money for the bank, etc. Admitting now that Ensign, the so-called teller, was not the proper officer to negotiate loans for the bank, upon what theory of law or justice can it be permitted to escape liability in this case? Hyre and Rasur, at the latter's request, entered the bank to borrow money from the bank. Hyre was an entire stranger, and was introduced to all

the managing officers to whom he made known his business, to-wit, to make a loan for $300 on the $1,500 of collaterals. Thereupon, in the presence of these officers and with their implied assent, Hyre made his note *to the bank* and deposited *with the bank* the securities. Clearly, he was trusting the Central Bank, and not Ensign, who attended to the business. The conduct of all parties was such as to lead Hyre to understand that his business was with the bank. Ensign was, to say the least, the reputed agent of the defendant; and whatever secret restrictions may have been imposed on Ensign's authority cannot be used now to defeat the plaintiff's claim. After payment of the principal note plaintiff had the right to call on defendant to restore the two notes of $1,000 and $500, so deposited with it as security, and on its failure the bank was liable to an action for the conversion.

The court's instructions sufficiently covered every feature of the law applicable to the case. The judgment was for the right party, and will be affirmed. All concur.

